**UNITED STATES of America, Plaintiff,**

v.

**Salvatore FINAZZO and Dominic Licavoli, Defendants.**

**Crim. A. No. 75–80597–2.**

United States District Court, E. D. Michigan, S. D.

Aug. 27, 1981.

Leonard Gilman, U. S. Atty. by John L. Newcomer, Walter I. Kozar, Sp. Attys., U. S. Dept. of Justice, Detroit, Mich., for plaintiff.

Richard M. Lustig, Southfield, Mich., for defendant Licavoli.

Ivan E. Barris, David Dumochel, Detroit, Mich., for defendant Finazzo.

## OPINION

GILMORE, District Judge.

This matter is before the Court upon a motion by defendant Licavoli to correct allegedly illegal sentences imposed upon him. The claim is that the sentences violate the double jeopardy clause of the Fifth Amendment to the Constitution.[1] The Court concludes they do not.

Defendant was convicted of inducing, procuring and causing the giving of an unlawful gratuity to a public official, in violation of 18 U.S.C. § 201(f) and 18 U.S.C. § 2 (Count 1); aiding and abetting the asking, demanding, exacting, soliciting, seeking, accepting, receiving, or agreeing to receive, an unlawful gratuity, in violation of 18 U.S.C. § 201(g) and 18 U.S.C. § 2, (Count 2); and conspiracy to violate 18 U.S.C. §§ 201(f), 201(g), 1952 (Travel Act—Count 4) and 2, all in violation of 18 U.S.C. § 371. Defendant Licavoli was acquitted of the offense charged in Count 4, the Travel Act count (18 U.S.C. § 1952), and convicted of the other counts. He was sentenced to two years imprisonment on Count 1; two years imprisonment on Count 2, and three years imprisonment on Count 5, the conspiracy count. The sentences of imprisonment are to run concurrently. In addition, Licavoli was fined $10,000 on each count, for a total of $30,000.

Defendant's contention is that the sentences were imposed in violation of the Fifth Amendment double jeopardy clause. Relying principally upon *United States v. Austin*, 529 F.2d 559 (CA6 1976), and *Pandelli v. United States*, 635 F.2d 533 (CA6 1980), defendant claims that because the "same evidence" was used to convict him of both the substantive counts and the conspiracy count, and the facts alleged in the indictment required a concert of action for each of the counts, his punishment for three offenses violates the double jeopardy prohibition of the Constitution.

The Constitutional prohibition against double jeopardy encompasses three guarantees: 1) protection against a second prosecution for the same offense after acquittal; 2) protection against a second prosecution for the same offense after conviction, and 3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In the instant case, the Court is concerned only with the third of these three guarantees.

---

1. "...nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

■ In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), Justice Powell, writing for the majority, articulated the principal test for determining whether two offenses are the same for the purpose of barring successive prosecutions. Quoting from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which in turn relied on *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), the Court held:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not...." *Brown*, 432 U.S. at 166, 97 S.Ct. at 2225.

Thus the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than the actual evidence to be presented at trial. As stated in a significant footnote in *Iannelli v. United States*, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 1293 n.17, 43 L.Ed.2d 616 (1975):

"The test articulated in *Blockburger v. United States*, 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932), serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. In determining whether separate punishment might be imposed, *Blockburger* requires that courts examine the offenses to ascertain 'whether each provision requires proof of a fact which the other does not'. *Id.* at 304 [52 S.Ct. at 182]. As *Blockburger* and other decisions applying its principle reveal... *the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.*" (Emphasis added).

Recent United States Supreme Court cases reiterate that Court's understanding that the *Blockburger* test focuses on the statutory elements of the offense rather than on the actual evidence presented at trial or the facts alleged in the particular indictment. *See Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). The critical question, therefore, is whether each count requires proof of a fact that the other does not. Application of the test emphasizes the statutory elements of the substantive offense involved, rather than the particular manner in which the offense was committed in the indictment, or the particular evidence offered to prove it in a specific trial—that is, whether it is possible to sustain a conviction under the offense charged, on grounds that differ from those necessary to sustain a conviction on the conspiracy count. *See United States v. Previte*, 648 F.2d 73 (CA1 1981).

■ Generally, of course, separate punishment can be imposed for conspiracy to do an act, and for the subsequent accomplishment of that act, without violating the double jeopardy clause. Allegation of an independent crime as an overt act of a conspiracy does not necessarily immunize the defendant from indictment. *Iannelli, supra; United States v. Mayes*, 512 F.2d 637 (CA6 1975), cert. den. 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975); *United States v. Bradley*, 421 F.2d 924 (CA6 1970); *United States v. Shelton*, 573 F.2d 917 (CA6 1978) cert. den. 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1978).

In *Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), the Supreme Court affirmed one defendant's convictions for conspiracy as well as aiding and abetting. The court rejected the contention that there was insufficient evidence to support the conviction for aiding and abetting, stating:

"The fact that some of the evidence may have served double duty by also supporting the charge of conspiracy is of course immaterial." *Id.* at 619, 69 S.Ct. at 770.

In *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1953), in the course of affirming one petitioner's conviction for conspiracy as well as aiding and abetting, the court stated:

"Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy .... Thus, the charge of conspiracy requires proof not essential to the convictions on the substantive offenses—proof of an agreement to commit an offense against the United States..." *Id.* at 11–12, 74 S.Ct. at 364.

In the *Pereira* case, the same evidence was used to support both the conspiracy conviction and the substantive offense. See also *United States v. Shelton, supra; United States v. Bright*, 630 F.2d 804 (CA5 1980); *United States v. Cowart*, 595 F.2d 1023 (CA5 1979); *United States v. Fife*, 573 F.2d 369 (CA6 1976); *United States v. Rodriguez* 612 F.2d 906 (CA5 1980).

In *United States v. Sutton*, 642 F.2d 1001 (CA6 1980), the Sixth Circuit recently explained that:

"Scholarly debate has not ceased concerning whether or not Congress *should* make conspiracy to commit unlawful acts a crime separate from the substantive offense. The law pertaining to this issue has, however, been settled at least since 1945, when the Supreme Court decided *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In that case...the late Justice William O. Douglas spelled out in detail the law pertaining to the proofs necessary to establish a criminal conspiracy and the relationship between conspiracy and substantive crimes....

'It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses.... A conviction for the conspiracy may be had though the substantive offense was completed.... And the

plea of double jeopardy is no defense to a conviction for both offenses.... It is only an identity of offenses which is fatal....'

"Moreover, it is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. As stated in *Sneed v. United States, supra*, 298 F. [911] p. 913, [(5th Cir.)] 'If the overt act be the offense which was the object of the conspiracy, and is also punished, there is not a double punishment of it.' The agreement to do an unlawful act is even then distinct from the doing of the act.

.    .    .    .    .

"Much more recently, the Supreme Court has cited the *Pinkerton* case with approval in *United States v. Iannelli, supra*. There, Justice Powell said for the Court:

'Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes. Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act.... Unlike some crimes that arise in a single transaction, ... the conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act .... Thus, it is well recognized that in most cases separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end.... Indeed, the Court has even held that the conspiracy can be punished more harshly than the accomplishment of its purpose...'" *Id.* at 1018–1020.

■ Thus, the essence of conspiracy is proof of a conspiratorial agreement, while aiding and abetting, in contrast, occurs where the defendant in some manner associates himself with the adventure, participates in it as in something he wishes to bring about, and seeks by his action to make it succeed.

Defendant, however, argues that, pursuant to the Sixth Circuit's decision in *Austin*,

his sentences for both the substantive counts and the conspiracy count are violative of the double jeopardy clause. Austin was convicted in the trial court of aiding and abetting and offering a bribe in violation of 18 U.S.C. § 201(f) and 18 U.S.C. § 2, accepting a bribe in violation of 18 U.S.C. § 201(g) and conspiracy to violate 18 U.S.C. § 201(f) and (g). The court sentenced the appellant to two years on each of the substantive counts and to four years on the conspiracy count. All sentences were to run concurrently, and on appeal the defendant alleged that he was denied his Fifth Amendment rights against double punishment for the same offense when he received sentences both on the two substantive counts and on the conspiracy count.

While noting that a defendant generally does not receive double punishment in violation of the Fifth Amendment when he is convicted and sentenced for a substantive offense and also for a conspiracy offense, the Sixth Circuit nevertheless held that the substantive offenses merge with the conspiracy count for purposes of sentencing. In so doing, the court focused on the evidence actually adduced at trial and on the facts as alleged in the indictment, rather than on the statutory elements of the offenses charged:

" . . . The test to be applied to determine whether the offenses are separate or essentially congruent is the 'same evidence' test. As the Supreme Court has held, whenever it appears that the proof of one offense proves every essential element of another growing out of the same act, the Fifth Amendment limits the punishment to the single act.

"Our examination of the record persuades us that essentially the same evidence in this case was relied upon to prove both the conspiracy count and the substantive offenses. The proof was offered indiscriminately on all three counts and it would be difficult, if not impossible, to weed out any item of evidence that was not pertinent to all counts. The overt acts in the fourth count were all relevant in proving the substantive offenses as well as the conspiracy.

"Our ruling does not mean that proof of bribery offenses condemned by 18 U.S.C. Secs. 201(f) and 201(g) would necessarily in all cases require proof of an agreement or joint action—the essence of a conspiracy. For these statutory offenses may or may not involve an agreement or a concert of action between two or more persons. Both subsections condemn certain acts of a single individual as well as acts of two or more persons.

"In the present case, however, the substantive offenses charged in counts one and three in effect charged the same agreement or concert of action on the part of Austin and others, as charged in the conspiracy count. Since proof of the substantive offenses, as alleged in counts one and three of the indictment, also proved every essential element of the conspiracy, as charged in count four, appellant was doubly punished in violation of the Fifth Amendment." *United States v. Austin, supra,* 529 F.2d at 562–64.

However, the Sixth Circuit has apparently limited *Austin* to those situations in which an indictment is drawn in such a way that the substantive offense in effect charges the same agreement or concert of action as that charged in the conspiracy count. In *United States v. Fife,* 573 F.2d 369 (CA6 1976), the defendant was convicted of conspiracy to travel in interstate commerce for the purpose of committing arson and of conspiracy to use the mails to defraud. The defendant was also convicted of three substantive counts of interstate travel to commit arson. On appeal, the defendant, relying on *Austin,* contended that the conspiracy and substantive counts charged him with identical offenses and that the counts therefore merge, precluding separate punishment on the two counts. The court disagreed, distinguishing *Austin* in the process:

"The test for determining if an indictment charges one offense or separate offenses was established by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, [182] 76 L.Ed. 306 (1932). In *Iannelli v. United States,* 420 U.S. 770, 785, 95 S.Ct. 1284,

**1090**

1294, 43 L.Ed.2d 616 (1975), the Court pointed out that there may be a 'substantial overlap' in the proof offered to support two charges but that the *Blockburger* test is satisfied so long as 'each provision requires proof of a fact that the other does not. . . .' In *United States v. Austin*, 529 F.2d 559 (6th Cir. 1976), the indictment was drawn in such a way that the substantive offenses 'in effect charged the same agreement or concert of action . . .' involving the defendant and other persons as was charged in the conspiracy count. Under these circumstances we held that there was a merger of offenses. The indictment in the present case is not drawn in the same way as the indictment which the court considered in *Austin.*

Of course the essence of a conspiracy is an agreement to commit an offense. A conviction under count one required proof of an agreement. Count three, on the other hand, charged interstate travel and causing interstate travel by the arsonist. The fact that the offenses charged in the substantive counts all related to a single event which was the ultimate purpose of the conspiracy is immaterial. The substantive offenses do not require an agreement whereas the conspiracy does. There may be conviction and punishment both for a conspiracy and for aiding and abetting in commission of a substantive offense so long as the 'separate offense' test of *Blockburger* is met. . . . Essentially the same arguments as those made by Klein in this case were considered by the court in *United States v. Bradley*, 421 F.2d 924, 927–28 (6th Cir. 1970) where the court stated:

'The commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy does not arise on a conviction for both. . . . Neither does a conviction for a substantive offense in any way merge a conspiracy charge into the substantive crime. . . . In *Pereira, supra*, 347 U.S., at 11, 74 S.Ct. 358, the Court specifically held that aiding and abetting, under the facts in

that case, was a separate crime from conspiring. We can find no meaningful distinction in the facts presented here.' " *United States v. Fife, supra*, 573 F.2d at 372–73.

Other circuits have adhered to the view that application of the *Blockburger* test focuses on the statutory elements of the charged offense, not on the particular manner in which the offense was committed or described in the indictment. See *United States v. Kearney*, 560 F.2d 1358 (CA9 1977) cert. den., 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977); *United States v. Solano*, 605 F.2d 1141 (CA9 1979) cert. den., 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980); *United States v. Wylie*, 625 F.2d 1371 (CA9 1980); *United States v. Cowart*, 595 F.2d 1023 (CA5 1979); *United States v. Bankston*, 603 F.2d 528 (CA5 1979); *United States v. Rodriquez*, 612 F.2d 906 (CA5 1980); *United States v. Bright*, 630 F.2d 804 (CA5 1980).

In its most recent consideration of the issue, the Sixth Circuit, in *Pandelli v. United States*, 635 F.2d 533 (CA6 1980) examined a double jeopardy claim in the context of a multi-purpose statute—violation of the Travel Act, 18 U.S.C. § 1952. The court construed the Supreme Court cases of *Whelan, supra*, and *Vitale, supra*, as "modif[ying] the abstract approach to the double jeopardy clause" traditionally employed by courts applying the *Blockburger* test. The court stated:

" . . . The *Blockburger* test has traditionally focused 'on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial.' . . . *Whalen* and *Vitale* make clear, however, that the requisite statutory elements must be examined from the vantage point of the particular case before the court.

"The *Blockburger* test, as modified in *Whalen* and *Vitale*, comes into play only after other techniques of statutory construction have proved to be inconclusive. The first step is for the court to inquire 'whether Congress intended to punish each statutory violation separately'. . . .

To determine the congressional intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction.... The Court reaches the *Blockburger* test only when those prior techniques of construction have failed to resolve the question of whether the legislature intends to allow cumulative punishments for violation of two statutes." *Id.* at 536.

The Court, however, recognized that the *Blockburger* test properly focuses on the statutory elements of each offense rather than on the facts as alleged in the indictment:

"The Court states in each opinion, however, that the *Blockburger* test in its modified form still 'focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial'...or 'the *facts* alleged in a particular indictment'.... Courts have always looked to the *law* the indictment claims the defendant violated. If they did not do so, they would not know even what statutes are at issue under the *Blockburger* rule. What the reviewing court must do now in applying *Blockburger* is go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail." *Id.* at 538. (Emphasis in original)

In the instant case, an examination of the elements of the respective offenses demonstrates that defendant Licavoli was convicted of separate and distinguishable offenses. A comparison of the three statutes and counts indicates that each "requires proof of a fact that the other does not."

■ The substantive offenses charged in Counts I and II require neither no more than one person for their commission, nor do they require proof of an agreement to commit an offense against the United States. See *United States v. Fife*, supra, at 373; *Iannelli v. United States*, supra, 420 U.S. at 777, n.10, 95 S.Ct. at 1289–90 n.10. § 201(f), the basis of Count I of the indict-

ment, proscribes the giving, offering or promising of an unlawful gratuity. It does not by its express terms include the element of criminal agreement. § 201(g), the basis of Count II, proscribes the asking, demanding, exacting, soliciting, seeking, accepting, receiving, or agreeing to receive an unlawful gratuity. Although the defendant suggests that the agreements charged in Counts II and V of the indictment are the same for purposes of double jeopardy analysis, this argument fails for two reasons.

■■ First, an "agreement to receive" an unlawful gratuity is an alternative element of the offense charged in Count II. As such, it is not required to be proven by the Government in order to sustain a § 201(g) conviction within the meaning of *Blockburger*. Unlike the statutory provisions of the Travel Act involved in *Pandelli*, supra, § 201(g) is not a multipurpose statute written with alternative jurisdictional elements and identifying alternative wrongs. § 201(g) prohibits one wrong—corruption of a public official—which can be accomplished by a variety of means, including "agreeing to receive" an unlawful gratuity. All of the means set forth in § 201(g) were alleged in the indictment; the Government was not required to particularize the means used by defendant in violating the statute. Thus, although evidence of an "agreement to receive" may have been introduced at trial, it was but one alternative means of proving a § 201(g) offense. The *Blockburger* test looks to what elements of proof a statute requires to establish its violation, not what may be incidentally alleged and proved. The existence of a double jeopardy violation turns on whether the same evidence is *required* to prove the two offenses, not the identity of the evidence actually produced at trial.

■ Second, the "agreement to receive" an unlawful gratuity, an alternative element of § 201(g), does not require proof of a "conspiratorial agreement" under § 371:

"[T]he giving and receiving of an unlawful gratuity are not interdependent offenses; the donee's intent may differ

from the donor's." *United States v. Evans,* 572 F.2d 455, 480 (CA5 1978).

The donor need not be found criminally culpable in order for the donee (in this case the public official) to be found guilty of agreeing to receive an unlawful gratuity. To the extent that a concert of action is required within the meaning of Wharton's Rule,[2] the indictment falls within the "third party exception" to Wharton's Rule. See *United States v. Foster,* 566 F.2d 1045, 1046–48 (CA6 1977); *United States v. Finazzo,* 407 F.Supp. 1127, 1130–31 (E.D.Mich. 1975).

Moreover, the indictment in the case at hand is not drawn in the same way as the indictment which the Sixth Circuit considered and focused on in *Austin.* In the instant case, Salvatore Lauricella, the public official and principal actor, was not charged in Count I of the indictment. This contrasts with the manner in which the indictment was drawn in *Austin,* where Count I charged American Motors Corporation and one of its agents with offering and promising an unlawful gratuity to Austin, the public official and principal actor, and charged Austin with procuring AMC to offer and promise him the unlawful gratuity in the same count.

Finally, assuming arguendo that the legal theory of a particular case should be accorded some weight in assessing a double jeopardy claim, the theory of the Government's case was not the same for each count. The Government did not suggest that defendant Licavoli aided and abetted Lauricella, the public official, in "agreeing to receive" the unlawful gratuity; the prosecution asserted that the conspiratorial agreement was already in existence when defendant Licavoli joined it.

▆▆▆▆ The dispositive fact is that Count V requires proof of an element—conspiratorial agreement—that the two substantive offenses alleged in Counts I and II do not. An overlap in factual allegations is immaterial. *Iannelli, supra.* Under the circumstances of the present case, the general rule applies: Ultimate consummation of the scheme is not essential to completing the crime of conspiracy; conversely conviction on a substantive count lies without proof of an agreement to commit the crime. The rationale underlying this rule was aptly set forth by the Sixth Circuit in *Sutton, supra,* at 1020:

"The consistent rationale of this long line of decisions rests on the very nature of the crime of conspiracy. This Court repeatedly has recognized that a conspiracy poses distinct dangers quite apart from those of the substantive offense.

'This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully obtained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.' *Callanan v. United States, supra,* [364 U.S. 587] at 593–594, 81 S.Ct. [321] at 325 [5 L.Ed.2d 312].

The sentences on all three counts will remain undisturbed, as will the imposition of fines.

An order in conformity to this opinion may be presented.

---

**2.** Wharton's Rule precludes an indictment for conspiracy to commit a substantive offense where the agreement of two persons is necessary for the completion of the substantive crime.